IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**MARCUS D. EVANS**                                                                               **PLAINTIFF**
**ADC #109369**

**V.**                            **NO. 4:20-CV-173-KGB-JTR**

**LORENETTA SMITH, et al.**                                            **DEFENDANTS**

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Defendants Lorenetta Smith, Telicia Mothershed, and Marquis Taylor ("Defendants") move for summary judgment on Eighth Amendment claims brought by Plaintiff Marcus D. Evans ("Evans"). Evans raised two Eighth Amendment claims – a conditions of confinement claim and an excessive force claim. Defendants' motion does not appear to explicitly address Evans's excessive force claim. Assuming, without admitting, that Defendants have properly moved for summary judgement on both claims, Evans addresses both claims below, as well as Defendants' claim they are entitled to qualified immunity.

**Facts**

Evans has been housed at the Arkansas Department of Correction's Varner Supermax Unit since 2009. Evans Dep. 11:23-24, *Doc. 87-1 at 4*. On April 9, 2019, Evans attended his cellblock's Step-Down program. *Id.* at 13:1-4, *Doc. 87-1 at 4*. The Step-Down program prepares inmates for housing in general population. Mothershed Dep. 23:11-23, *Doc. 87-9 at 23*. Separate Defendant

Telicia Mothershed ("Mothershed") oversaw inmates during the Step-Down program. *Id.* at 27:1-5, *Doc. 87-9 at 27*.

At approximately 7:00 a.m. on April 9, 2019, Evans was escorted to the program by Mothershed. *Id.* at 38:18-21, *Doc. 87-9 at 38*. Inmates are escorted in hand restraints and leg restraints. *Id.* at 30:7, *Doc. 87-9 at 30*. Leg restraints are left on the inmate during the Step-Down program. *Id.* at 27:19-23, *Doc. 87-9 at 27*. Mothershed was responsible for the hand and leg restraints that she placed on Evans when escorting him to the Step-Down program. *Id.* at 36:22-38:4, *Doc. 87-9 at 36-38*.

At approximately 9:00 a.m., Evans was escorted back to his cell from the program in hand and leg restraints by Separate Defendant Lorennetta Smith ("Smith") and Separate Defendant Marquis Taylor ("Taylor"). Evans Dep. 13:10-13, *Doc. 87-1 at 4*; Taylor Dep. 11:5-17, *Doc. 87-8 at 11*; Warden Gibson Dep. 12:2-10, *Doc. 87-7 at 12*. Once back to Evans's cell, Taylor closed the cell door and removed Evans's hand restraints through the security/food trap door. Taylor Dep. 13:22-25, *Doc. 87-8 at 13*. The security/food trap door is located near the inmate's waist. Smith Dep. 22:23-25, *Doc. 87-6 at 22*. Evans's cell had two windows on the door to his cell. Evans Dep. 17:2-5, *Doc. 87-1 at 5*. An inmate's body is visible from the outside of the cell. Smith Dep. 23:12-16, *Doc. 87-6 at 23*.

Evans asked Smith and Taylor to "take the leg restraints off" after they escorted him back to his cell, but "they refused to take them off." Evans Dep. 17:14-16, *Doc. 87-1 at 5*. Evans and Taylor "got into an argument . . . about the leg restraints," and Taylor told Evans to "just stay in them." *Id*. at 17:18-21, *Doc. 87-1 at 5*. Evans then asked Mothershed to remove the leg restraints, but she also refused, telling Evans, "I ain't the one that put you back in your cell." *Id*. at 18:5-12, *Doc. 87-1 at 6*. Evans stood at the door to his cell calling out for help. *Id*. at 19:11-22, *Doc. 87-1*

2

*at 6*. When Mothershed came back to the unit for gym call, Evans asked her again to remove the leg restraints. But "[Mothershed] just looked at [Evans] and didn't say nothing." *Id.* at 22:3-13, *Doc. 87-1 at 7*. Evans remained in the restraints from approximately 9:00 a.m. until 11:50 p.m. Warden Gibson Dep. 12:2-13:8, *Doc. 87-7 at 12-13*.

Prior to April 9, 2019, Evans "had engaged in several heated verbal altercations with the named Co-Defendants all who had threatened to cause [him] harm if and when the opportunity presented itself." Compl. ¶ 10, *Doc. 2 at 3*. Evans also testified that he "had plenty of arguments with [Defendants]" prior to the April 9, 2019 incident, including "two or three with Smith" and "many arguments with [Taylor] and Mothershed." Evans Dep. 33:10–16, *Doc. 87-1 at 9*.

At 11:50 p.m., Evans advised Lt. Bivens he was still in leg restraints. Warden Gibson Dep. 12:2-13:8, *Doc. 87-7 at 12-13*. Bivens observed that Evans was still in his leg restraints. Evans had been forced to cut off his jumpsuit and boxers with a state-issued razor to take a shower, and Bivens found Evans wrapped in a bed sheet to keep from being exposed. *Id.* at 15:2-16, *Doc. 87-7 at 15*.

Defendants deny Evans called out to staff from his cell to advise that he was still in leg restraints prior to 11:50 p.m. The veracity of this assertion was called into question by none other than James Gibson, the Warden of Varner Supermax. Warden Gibson testified, "[I]t's hard for me to believe Marcus Evans didn't tell somebody between 9:00 [a.m.] and 11:00 at night." Warden Gibson Dep. 20:21-21:7, *Doc. 87-7 at 20-21*. A guard would have seen Evans at least four times during this timeframe – when delivering and later retrieving his lunch and dinner trays. *Id.* at 13:23-14:7, *Doc. 87-7 at 13-14*. There would have also been typical rounds conducted by mental health/medical staff, and those individuals would have spoken to Evans and would have been able to see that Evans was still in his leg restraints. *Id.* at 14:7-24, *Doc. 87-7 at 14*. To have not called

3

out would have been contrary to Evans's personality. According to the Warden, Evans was a vocal guy that liked to express himself to staff. *Id.* at 21:8-9; 22:7, *Doc. 87-7 at 21-22*.

At 12:23 a.m. on April 10, 2019, Evans was seen by medical staff and complained of pain to his lower extremities, which he rated 10 out of 10 on the pain scale. *Doc. 87-5 at 60*. Evans was prescribed Naproxen to take for five days for pain. *Id.*

As a result of Defendants' failure to remove Evans's leg restraints, Defendants were issued written reprimands. Warden Gibson Dep. 19:16-17, *Doc. 87-7 at 19*. The written reprimands included a six-month probationary period and prohibited Defendants from being eligible for the annual performance evaluation raise for that year. *Id.* at 19:18-21, *Doc. 87-7 at 19*. Evans filed a grievance that was found to have merit but the grievance was deemed resolved since the restraints were ultimately removed and corrective action was taken against Defendants. *Id.* at 20:1-9, *Doc. 87-7 at 20*.

**Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, the movant is entitled to summary judgment if there are no genuine disputes as to any material fact and the movant is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the Court must view all facts and inferences from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *see also Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 272 (8th Cir. 1992) (on summary judgment, courts "believe the evidence of the party opposing summary judgment and" draw "all justifiable inferences … in that party's favor.").

**Argument**

Defendants argue Evans cannot demonstrate a material fact dispute to avoid summary judgment on his Eighth Amendment claims. Defendants do not dispute they left leg irons on Evans for 15 to 18 hours.[1] They also do not argue that a credible dispute exists as to whether they knew they left Evans in the leg irons and refused to remove them. Rather, Defendants claim their failure to remove the leg irons from Evans for those hours did not amount to a sufficiently serious deprivation to constitute cruel and unusual punishment. *Doc. 88 at 8-9*. Defendants also state that Evans has not presented evidence of a constitutional violation because they claim he was not injured by the leg irons. *Id*. at 9-10.

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992); *see also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment"). Defendants' actions in this case violated Evans's Eighth Amendment rights in two distinct ways.

First, there is evidence that Defendants refused to remove Evans's leg irons to "maliciously or sadistically" cause him harm. *See Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008) (officers may reasonably use restraints "in a good-faith effort to maintain or restore discipline but may not use it maliciously or sadistically to cause harm."). Second, there is evidence that Defendants were deliberately indifferent to the serious risk of harm posed to Evans by leaving him

---

[1] In his deposition, Evans testified he was left in leg restraints for approximately 18 hours, a contention Defendants do not appear to dispute. Other evidence, however, shows Evans was left in restraints from approximately 9:00 a.m. to just before midnight, a period of approximately 15 hours.

in leg irons for 15 to 18 hours. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (prison officials are deliberately indifferent when they know of and disregard a substantial risk of serious harm to a prisoner).

### 1. Defendants' refusal to remove the leg irons from Evans for 15 to 18 hours was excessive physical force intended to cause Evans harm.

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson*, 503 U.S. at 9-10; *see also Burns*, 752 F.3d at 1138 ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment"). When prison officials stand accused of using excessive force, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *see also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically."). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. *See Jordan v. Gardner*, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc).

Case law makes it clear that prison officials may be liable for using excessive force in violation of the Eighth Amendment when force is applied against prisoners without justification. In *Hope v. Pelzer*, the Supreme Court concluded that a prisoner's Eighth Amendment rights had been violated where prison officials subdued the prisoner, placed him in leg irons, ordered him to remove his shirt, and then handcuffed him to a hitching post where he remained for seven hours.

6

536 U.S. 730 (2002). Significantly, for this case, the Supreme Court held that "cuffing an inmate to a hitching post for a period of time extending past that required to address an immediate danger or threat is a violation of the Eighth Amendment." *Id.* at 747.

In *Walker v. Bowersox*, the Eighth Circuit found that prison officials' use of a restraint board for punishment can violate the Eighth Amendment. 526 F.3d at 1188. In that case, prison officials offered "no explanation . . . as to why it was then necessary to apply force [to the prisoner]." *Id.*; *see also Jackson v. Hereford*, 2016 U.S. Dist. LEXIS 44083, *16-17 (D. Minn. 2016) ("Therefore if the fact-finder were to find that Gutzmer used the restraint board as punishment and not for incapacitation, he would have acted in violation of clearly established Eighth Circuit precedent interpreting the Eighth Amendment, and Gutzmer's qualified immunity defense would fail.").

Defendants do not address whether their decisions to leave Evans in leg irons for many hours amounted to excessive force in violation of the Eighth Amendment. Evans testified in his deposition that he asked Defendants Smith and Taylor to "take the leg restraints off" after they escorted him back to his cell, but "they refused to take them off." Evans Dep. 17:14-16, *Doc. 87-1 at 5*. Evans and Defendant Taylor "got into an argument . . . about the leg restraints," and Defendant Taylor told Evans to "just stay in them." *Id.* at 17:18-21, *Doc. 87-1 at 5*. Evans then asked Defendant Mothershed to remove the leg restraints, and she also refused, telling Evans, "I ain't the one that put you back in your cell." *Id.* at 18:5-12, *Doc. 87-1 at 6*. Evans stood at the door to his cell calling out for help. *Id.* at 19:11-22, *Doc. 87-1 at 6*. When Mothershed came back to the unit for gym call, Evans asked her again to remove the leg restraints. But "[Mothershed] just looked at [Evans] and didn't say nothing." *Id.* at 22:3-13, *Doc. 87-1 at 7*.

Evans's testimony also supports his claim that Defendants left him in the leg restraints to maliciously and sadistically cause him harm. Evans "had engaged in several heated verbal altercations with the named Co-Defendants all who had threatened to cause [him] harm if and when the opportunity presented itself." Compl. ¶ 10, *Doc. 2 at 3*. Evans also testified that he "had plenty of arguments with [Defendants]" prior to the April 9, 2019 incident, including "two or three with Smith" and "many arguments with [Taylor] and Mothershed." Evans Dep. 33:10–16, *Doc. 87-1 at 9*.

Defendants fail to offer any justification for refusing to remove the leg irons from Evans. There was "no basis for a reasonable officer to believe force was needed at that time to prevent [Evans] from endangering himself or others." *See Thompson v. Zimmerman*, 350 F.3d 734, 735 (8th Cir. 2003). Prior to Defendants' refusal to remove the leg restraints, Evans posed no threat and had complied with Defendants' instructions—he had just walked back to his cell from the Step-Down Program with Defendants Smith and Taylor and allowed them to remove his hand restraints. Evans Dep. 1:14-16, *Doc. 87-1 at 5*. Defendants offer no explanation for why they left Evans in his leg restraints other than their contentions they were not aware he was still in the restraints. Smith Dep. 42:10-14, *Doc. 87-6 at 42*; Taylor Dep. 24:25-25:3, *Doc. 87-8 at 24-25*; Mothershed Dep. 51:12-13, *Doc. 87-9 at 51*.

While Defendants do not address Evans's excessive force claim in their Summary Judgment Motion or Brief in Support, they do claim that Evans was not injured. *Doc. 88 at 9-10* ("Plaintiff cannot demonstrate that he suffered any injury."). First, this is a contested issue of fact. Evans told the nurses who attended to him after the leg irons were removed that the pain to his lower extremities was "10 out of 10." *Doc. 87-5 at 60*. Nurses prescribed him naproxen, 220mg, to be taken twice-a-day for five days for pain relief. *Id.* Evans also testified that he was in pain for

approximately eleven days following the injury because he had continued numbness in his ankle and leg. Evans Dep. 30:12–19, *Doc. 87-1 at 9*.

Second, Evans may prevail on his excessive force claim even without evidence of a significant injury. The objective component of an Eighth Amendment claim is contextual and responsive to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id*. at 9 (citation omitted); *see also Treats v. Morgan*, 308 F.3d 868, 874 (8th Cir. 2002) ("No lasting injury is necessary to make out an Eighth Amendment violation, for the infliction of pain is sufficient if it was inflicted for the purpose of causing harm."); *cf., e.g., Ray v. Hogg*, 2007 U.S. Dist. LEXIS 68806, 2007 WL 2713902 (E.D. Mich. Sept. 18, 2007) (determining that an excessive force claim survived summary judgment when the inmate testified that the guards fastened handcuffs too tightly during transport then laughed at inmate and tightened the cuffs further, even though there was scant evidence of injury in the medical records and the guards testified they had no recollection of the incident).

Evans's claim that Defendants knowingly left him in leg irons for 15 to 18 hours in order to maliciously and sadistically punish him in violation of the Eighth Amendment is supported by credible evidence that, at the least, creates disputed issues of material fact. Summary judgment should therefore be denied.

### 2. Defendants' refusal to remove the leg irons from Evans for 15 to 18 hours subjected Evans to unconstitutional conditions of confinement.

An Eighth Amendment challenge to prison conditions is subject to the deliberate indifference standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison officials are

9

deliberately indifferent when they know of and disregard a substantial risk of serious harm to a prisoner. *Id*. at 836. To establish a conditions of confinement claim, a plaintiff must demonstrate (1) that the alleged deprivation was "objectively, sufficiently serious" to result in the "denial of the minimal civilized measure of life's necessities," and (2) that the prison official whose action or omission caused the deprivation behaved with "deliberate indifference to inmate health or safety." *Hamner v. Burls*, 937 F.3d 1171, 1178-1179 (8th Cir. 2019).

In their Summary Judgment Motion, Defendants do not dispute the subjective component of Evans's conditions of confinement claim, i.e., they do not assert they were not deliberately indifferent. Rather, they claim there was no objective risk of serious harm to Evans when they left him in the leg irons for many hours. *Doc. 88 at 8-9*. They state Evans was able to complete "normal, everyday activities with only minor inconvenience." *Id*. at 9.

"No static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981) (quoting *Trop* v. *Dulles*, 356 U.S. 86, 101 (1958)). "The Constitution contemplates that in the end [a court's] own judgment will be brought to bear on the question of the acceptability of a given punishment." *Rhodes*, 452 U.S. at 347. Thus, "[c]onditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Id*.

The Eighth Circuit has found unconstitutional conditions of confinement when prisoners were forced to stand outside in winter weather without proper clothing for about two hours. *Gordon v. Faber*, 973 F.2d 686, 687-88 (8th Cir. 1992). In *Gordon*, the deprivation was only temporary, and there was no medical documentation of any injuries, but the Eighth Circuit nonetheless upheld

10

the district court's findings that the prisoners' Eighth Amendment rights were violated. *Id*; *see also Everett v. Alman*, 3:20-cv-197 DPM-PSH, 2020 U.S. Dist. LEXIS 252246 (E.D. Ark. Dec. 21, 2020), adopted 3:20-cv-197-DPM-PSH, 2021 U.S. Dist. LEXIS 55500 (E.D. Ark. March 24, 2021) (finding that a prisoner stated an unconstitutional condition of confinement claim where he alleged that certain defendants handcuffed and shackled him too tightly, made him take a cold shower, and then restrained him naked for several hours without allowing him to dry off); *Hastings v. May*, 2010 U.S. Dist. LEXIS 142816 (E.D. Ark. Nov. 26, 2010), adopted 2:09CV00187 BSM/JTK, 2011 U.S. Dist. LEXIS 45088 (E.D. Ark. Apr. 25, 2011) (finding that inmate could proceed on his unconstitutional condition of confinement claim that he was placed in the drunk tank for ten days and in a restraint chair for five hours).

Each of the cases Defendants cite is distinguishable from this case. *See, e.g., O'Leary* v. Iowa State Men's Reformatory, 79 F.3d 82 (8th Cir. 1996) (no unconstitutional condition of confinement where record established a penological justification for punishment after inmate had received a large number of disciplinary reprimands); *Smith v. Copeland*, 87 F.3d 265 (8th Cir. 1996) (no unconditional condition of confinement where plaintiff was offered, but declined, cleaning equipment and an opportunity to flush his "full toilet"); *Seltzer-Bey v. Delo*, 66 F.3d 961 (8th Cir. 1995) (no evidence that prison officials knew of and disregarded an excessive risk to prisoner's health or safety).

The only case Defendants discuss at length is *Key v. McKinney*, 176 F.3d 1083 (8th Cir. 1999). There, prison officials intentionally restrained an inmate for 24 hours after the prisoner threw water on a prison official. *Id*. at 1084-85. However, the Eighth Circuit determined that officers were not deliberatively indifferent because they modified the inmate's restraints in response to his bathroom requests, regularly checked on his conditions, loosened his handcuffs,

11

and considered his medical conditions throughout the time he was restrained. *Id*. at 1086. Thus, in *Key*, not only was there a penological justification for the prisoner's restraint, prison officials also checked up on the prisoner and accommodated various requests during the time he was restrained. In contrast, here, Defendants have offered no penological justification for why they left the leg irons on Evans. Evans's testimony is that the Defendants did so deliberately because of a history of acrimonious arguments between Defendants and Evans. In other words, Defendants' actions were "totally without penological justification" and "involve[d] the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153 (1976)).

Defendants claim that Evans suffered no injury and incurred only a "minor inconvenience" as a result of their actions. As discussed above in Section 1, this is a disputed fact. Evans reported maximum pain to medical providers directly after the shackles were removed, *Doc. 56-2 at 4*, and testified that he was in pain for approximately eleven days following the injury because he had continued numbness in his ankle and leg. Evans Dep. 30:12–19, *Doc. 87-1 at 9*. As this Court has previously found, "the record contains evidence that Evans suffered more than mere discomfort." *Doc. 68 at 6*.

Moreover, Defendants' contention that Evans could perform normal daily activities with only minor inconvenience grossly understates the effect of being left alone in leg restraints for an entire day and half of the night. The very purpose of leg restraints is to restrict an inmate's freedom of movement to engage in normal activities. Leg restraints virtually immobilize an inmate, restricting his or her ability to ambulate. The restrictions on normal activities that are inherent in leg restraints were evident in this case – to take a shower required Evans to cut off his jumpsuit and boxers leaving him only a bed sheet to cover himself for many hours.

### 3. Defendants are not entitled to qualified immunity.

Defendants assert they are entitled to qualified immunity, but they do not make any specific qualified immunity argument apart from their arguments discussed above. The Eighth Amendment rights discussed above, including Evans's right to be free from excessive force and unconstitutional conditions of confinement, were clearly established as of April 9, 2019. *See, e.g., Walker v. Bowersox*, 526 F.3d 1186 (8th Cir. 2008) (discussing Eighth Amendment right to be free from excessive force); *Gordon v. Faber*, 973 F.2d 686 (8th Cir. 1992) (discussing unconstitutional conditions of confinement).

## Conclusion

Based on the foregoing, Evans respectfully requests that the Court deny Defendants' motion for summary judgment.

Respectfully submitted by,

/s/ J. Blake Hendrix
J. Blake Hendrix, Ark. Bar No. 86066
bhendrix@fc-lawyers.com
Chris Stevens, Ark. Bar No. 2012289
cstevens@fc-lawyers.com
Fuqua Campbell P.A.
Riviera Tower
3700 Cantrell Road, Ste. 205
Little Rock, AR 72202
(501) 975-7123 (direct dial)

*Counsel for Plaintiff*