IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTAL DIVISION

**MARCUS D. EVANS, ADC #109369**                                              **PLAINTIFF**

**v.**                    **CASE NO. 4:20-CV-00173-KGB-JTR**

**LORENETTA SMITH,** *et al.*                                                 **DEFENDANTS**

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

For their Brief in Support of their Motion for Summary Judgment, Defendants Lorenetta Smith, Telicia Mothershed, and Marquis Taylor state:

## I.     INTRODUCTION

Plaintiff, Marcus D. Evans, ADC # 109369, is an inmate at the Varner Supermax Unit of the Arkansas Division of Correction ("ADC"). SUMF ¶ 1. Plaintiff's only remaining claim is that Defendants, in their individual capacity, used excessive force against him. DE 96. Each Defendant was an employee of the ADC at the time of the incidents alleged, and each Defendant has denied the allegations against them. SUMF ¶ 2.

Defendants are entitled to qualified immunity. Plaintiff has proven no set of facts which amount to a constitutional violation. If any force was applied to Plaintiff, it was applied in good faith to escort him to the step down program. For these reasons, Plaintiff's excessive force claim must fail.

The undisputed facts show that Defendants did not violate Plaintiff's constitutional rights and are therefore entitled to qualified immunity. Defendants respectfully request that the claims against them be dismissed with prejudice.

## II.     SUMMARY OF FACTS

Defendants incorporate by reference, as if stated word for word, the Statement of Undisputed Material Facts ("SUMF") and the supporting exhibits filed in support of their Motion for Summary Judgment.

On the morning of April 9, 2019, Plaintiff attended his cellblock's step-down program. SUMF ¶ 7. Defendant Mothershed put Plaintiff in restraints to escort him to the step down program that Plaintiff was scheduled to attend that day. SUMF ¶ 44. Defendants Taylor and Smith did not put the leg or hand restraints on Plaintiff and did not escort him to the step down program. SUMF ¶ 45. When the step-down program was over, Plaintiff was escorted back to his cell by Defendants Lorennetta Smith and Marquis Taylor. SUMF ¶ 8. Defendants Smith and Taylor were the only ADC personnel that escorted Plaintiff back to his cell on the morning of April 9, 2019, SUMF ¶ 10. This was not the first time that Defendants Smith or Taylor had escorted Plaintiff to and from his cell for various activities, such as the step-down program, visits to the infirmary, or elsewhere. SUMF ¶ 9. Defendant Telicia Mothershed did not participate in escorting Plaintiff back to his cell, because she was supervising other inmates who had attended the step-down program and who were waiting to be escorted back to their cells. SUMF ¶ 11. Plaintiff was wearing both hand restraints and leg restraints while being escorted back to his cell, consistent with practice any time Plaintiff is escorted anywhere outside of his cell. SUMF ¶ 12. Leg restraints do not have individual keys. SUMF ¶ 13. Corporals working utility, sergeants, majors, and lieutenants all have a key that can unlock handcuffs and leg restraints. SUMF ¶ 14.

Once Plaintiff was returned to his cell, Defendant Taylor closed the cell door and removed Plaintiff's hand restraints though the security/food trap door. SUMF ¶ 15. The security/food trap door on a cell door is near an inmate's waist when standing and measures roughly eight inches tall

and two feet wide. SUMF ¶ 16. After Defendant Taylor removed Plaintiff's hand restraints, he and Defendant Smith left Plaintiff's cell within a matter of seconds to attend to other duties in the cellblock and elsewhere in the unit. SUMF ¶ 17. When Defendants Smith and Taylor walked away from Plaintiff's cell, Defendant Smith was carrying leg irons, a tether, and two pairs of hand cuffs. SUMF ¶ 18. There was no conversation between Plaintiff and Defendants Smith and Taylor during the escort to Plaintiff's cell. SUMF ¶ 19. Defendant Mothershed did not hear Plaintiff call out or inform her that his leg restraints had not been removed. SUMF ¶ 20. The video footage does not show Defendant Mothershed in front of Plaintiff's cell, or looking in the direction of his cell. SUMF ¶ 21. On April 9, 2019, Defendant Mothershed was responsible for checking the equipment cart to ensure that equipment was properly returned to the cart by the end of the day. SUMF ¶ 22. As she completed her review of the equipment cart, Defendant Mothershed, did not realize that leg restraints had not all been returned, and assumed that the leg restraints were being used for yard call. SUMF ¶ 23.

Plaintiff was in the leg restraints in his cell from about nine or ten in the morning on April 9, 2019, until about 11:50PM that night. SUMF ¶ 24. During those hours in the leg restraints, Plaintiff's testimony is that he stood, sat, laid down on his bunk, showered, and even took a nap for a few hours. SUMF ¶ 25. ADC medical personnel makes rounds in the cellblocks twice a day to administer medications. SUMF ¶ 26. It is during this time that inmates may speak with the nurse making rounds to share a medical issue or lodge a medical complaint. SUMF ¶ 27. On April 9, 2019, Nurse Johnson made her round through Plaintiff's cellblock at about 8:38PM. SUMF ¶ 28. It is documented that Plaintiff voiced no complaints to Nurse Johnson at that time. SUMF ¶ 29.

Later that night, Plaintiff called out to Lt. Bivens to come see him at his cell. SUMF ¶ 30. Plaintiff informed Lt. Bivens at that time that his leg restraints had not been removed by

Defendants Smith and Taylor that morning. SUMF ¶ 31. Lt. Bivens, along with Sergeants Brothers, Ryas, and Burchfield, went to Plaintiff's cell to look at the leg restraints. SUMF ¶ 32. It was then that Lt. Bivens retrieved a camera and took several photos of Plaintiff in the leg restraints. SUMF ¶ 33. Plaintiff could stand as he talked with these officers and in several positions for the photos. SUMF ¶ 34. Sergeants Ryas and Burchfield removed Plaintiff's leg restraints after the photos were taken. SUMF ¶ 35. Plaintiff was immediately escorted to the infirmary by Bivens, Ryas, Burchfield, and Brothers to be evaluated by medical personnel. SUMF ¶ 36. Plaintiff was able to successfully walk to the infirmary for his evaluation. SUMF ¶ 37. Nurse Johnson evaluated Plaintiff at the infirmary. SUMF ¶ 38. In her report, Nurse Johnson stated that Plaintiff was able to walk to the infirmary and was able to wiggle his toes without grimacing, wincing, or complaints, and had no edema to his bilateral lower extremities. SUMF ¶ 39. Nurse Johnson prescribed Plaintiff Naproxen for any pain he was experiencing, at 220mg, for just five days with no refills. SUMF ¶ 40. After this evaluation, which occurred in the early hours of April 10, 2019, Plaintiff did not complain further to medical personnel, at any time, about any lingering issues or sustained pain with his legs, ankles, or feet. SUMF ¶ 41. ADC supervisors conducted an investigation and determined that Defendant Mothershed failed to properly inventory the leg irons and that Defendants Smith and Taylor inadvertently left the leg irons on Plaintiff. SUMF ¶ 42. Defendants were given a written reprimand. SUMF ¶ 43. None of Defendants struck, pushed, kicked, or otherwise hit Plaintiff. SUMF ¶ 46. Defendants did not use pepper spray, tasers, or any other types of less-lethal munitions on Plaintiff. SUMF ¶ 47. Defendants did not forcibly restrain Plaintiff on April 9, 2019. SUMF ¶ 48.

### III. STANDARD OF REVIEW

The Federal Rules of Civil Procedure require a court to grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018). There are two ways for the moving party to meet its burden: "it can produce evidence negating an essential element of the nonmoving party's case, or it can show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Bedford*, 880 F.3d at 996. "Once the moving party satisfies this initial burden, the nonmoving party 'must respond by submitting evidentiary materials of specific facts showing the presence of a genuine issue for trial." *Id.* (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)).

The dispute of fact must be both material and genuine. A dispute is material if it is "outcome determinative under prevailing law." *Walls v. Petrohawk Properties, LP*, 812 F.3d 621, 625 (8th Cir. 2015). A dispute of fact is "genuine" if a factfinder could reasonably determine the issue in the nonmoving party's favor. *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 714 (8th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "A factfinder's decision is reasonable if it is based on 'sufficient probative evidence' and not on 'mere speculation, conjecture, or fantasy." *Id.* (citing *Williams v. Mannis*, 889 F.3d 926, 931 (8th Cir. 2018)). In short, to survive summary judgment, the nonmoving party must meet "proof with proof." *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 986 (8th Cir. 2016).

## IV.   ARGUMENT

### A. Defendants are shielded by qualified immunity from Plaintiff's claims of excessive use of force in their individual capacities.

Qualified immunity "shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established right of which a reasonable person would have

known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). Qualified immunity protects "all but the plainly incompetent or those who willingly violate the law." *Chestnut v. Wallace*, 947 F.3d 1085, 1093 (8th Cir. 2020) (citations omitted). Qualified immunity applies even if the actor's conduct were below a standard of care, or even grossly negligent. *S.S. v. McMullen*, 225 F.3d 960 (8th Cir. 2000) ("gross negligence is not actionable…under § 1983" as a violation of a constitutional right). Likewise, simple non-compliance with State policies or regulations fails to create a constitutional issue. *Kennedy v. Blankenship*, 100 F.3d 640, 643. A violation of prison policy alone does not give rise to § 1983 liability. *Moore v. Rowley*, 126 F. App'x 759, 760 (8th Cir. 2005); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997). Nor do inmates have a due process right to enforce compliance with internal prison rules or regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). Finally, in a qualified immunity analysis, a defendant "is only liable for his…own misconduct"; individual capacity claims cannot be based on imputed or vicarious fault. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Qualified immunity involves a two-part inquiry: (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and, (2) whether that right was clearly established at the time of the alleged misconduct. *Brown*, 574 F.3d at 496. Officers are entitled to qualified immunity if no reasonable fact finder could answer both questions in the affirmative. *Nelson v. Correctional Med. Services*, 583 F.3d 522, 528 (8th Cir. 2005). Courts may exercise discretion in deciding whether to begin with the first or second prong of qualified immunity analysis. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Off.*, 403, F.3d 510, 515 (8th Cir. 2005). Thus, issues about qualified immunity are appropriately resolved on summary judgment. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Here, Plaintiff has shown no violation of his constitutional rights. Additionally, if any of Defendants' actions amount to a constitutional violation, it was not clearly established in April 2019 that these actions would violate Plaintiff's rights. Thus, Defendants are entitled to qualified immunity.

### 1. *Excessive force was not used against Plaintiff.*

To defeat qualified immunity and prevail on an Eighth Amendment excessive use of force claim, a plaintiff must allege that the defendant intentionally used force and that the force was not applied in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). When determining whether the force was applied in good faith, the court should consider these factors: "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Id*.

            i.      *Plaintiff has not alleged, much less proven, any use of force.*

The excessive force standards make it clear that force is required for an excessive force claim, but do not explicitly describe what is meant by force. While the Supreme Court has not explicitly defined force in the context of an Eighth Amendment § 1983 claim, it has defined force several times in other contexts. *See generally Stokeling v. U.S.*, 139 S.Ct. 544, 551 (2019) (discussing the overlap between the meaning of force and violence in common-law "'Force' means '[p]ower, violence, or pressure directed against a person or thing,' Black's Law Dictionary 656 (7th ed. 1999), or 'unlawful violence threatened or committed against persons or property,' Random House Dictionary of the English Language 748 (2d ed. 1987)); *U.S. v. Castleman*, 572 U.S. 157, 162 (2014) (finding as a general rule that force as "a common-law term of art should be given its established common-law meaning."); *Voisine v. U.S.*, 579 U.S. 686, 701-702 (2016) ("When a person talks about 'using force' against another, one thinks of intentional acts—punching, kicking, shoving, or using a weapon. Conversely, one would not naturally call a car

7

accident a 'use of force,' even if people were injured by the force of the accident. As Justice Holmes observed, "[E]ven a dog distinguishes between being stumbled over and being kicked." O. Holmes, The Common Law 3 (1881).)"); *Johnson v. U.S.*, 559 U.S. 133, 134 (2010) (the common law definition of force is satisfied by the "slightest offensive touching"). Acting as instructed and applying the common-law meaning to the term "force" Plaintiff would be required to plead some offensive touching, however slight it may be. *Id*. There simply was no offensive touching pled here whatsoever. *See generally* Doc. Nos. 2 & 7.

The phrase "excessive force" implies some amount of force. The standards for an Eighth Amendment excessive force claim, use the word force repeatedly. The common law definition of force requires at least some offensive touching, although no offensive touching was pled here. There is no case law to support the proposition that leaving an inmate in leg restraints without more could be an excessive force claim. Plaintiff did not state or prove a valid excessive force claim, because no force was alleged at all.

      ii.  *If any force was used, it was used in good faith.*

Officers can use force when it is done in a good-faith effort to maintain discipline. *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006). Because *Jackson* and *Walker* held that unnecessarily and overly restraining inmates could constitute excessive force, the only potential force used here would be Defendant Mothershed placing restraints on Plaintiff. Defendant Mothershed put Plaintiff in his restraints so that Plaintiff could attend the step down program as scheduled. SUMF ¶¶ 44-45. Plaintiff was already shackled when he was at the step-down program and does not state that the shackles were placed on him maliciously and sadistically, "Plaintiff was sitting at the step down program table in handcuffs and leg restraints[.]" Doc. No. 2 at 3. Plaintiff was placed in hand and leg restraints when he was removed from his cell, like all maximum-

security unit inmates are to maintain discipline. Doc. No. 87-1 at 13:22-14:2; Doc. No. 87-6 at 27:8-16; Doc. No. 87-7 at 7:18-23; Doc. No. 87-8 at 11:13-17; Doc. No. 87-9 at 27:17-28:14. There is no dispute that this was done in good faith from the outset. Plaintiff had to be shackled to participate in the step-down program. *Id*. If Defendant Mothershed placing Plaintiff in cuffs was a use of force, there was a clear need for that force to allow Plaintiff, an inmate at a maximum-security unit, to attend the step down program. There is also a clear relationship between the need and amount of force used. Inmates at maximum security units are required to be restrained when they are removed from their cells. If Mothershed had not restrained Plaintiff, he could not be moved from his cell safely and securely. Furthermore, "[a] de minimis use of force is insufficient to support a claim, and it may well be that most plaintiffs showing only de minimis injury can show only a corresponding de minimis use of force." *Robinson v. Hawkins*, 937 F.3d 1128, 1136 (8th Cir. 2019) (citation omitted).

If the court is construing that Defendants Smith and Taylor's failure to remove the leg restraints as excessive force, then that claim also fails. There is no case law in any jurisdiction that holds that leaving an inmate in leg restraints without more could be an excessive force claim. If failure to remove restraints is a use of force, then it is de minimis use of force, and a "de minimis use of force is insufficient to support a claim[.]" *Id*. While there was no need to leave Plaintiff in leg restraints, there was also no actual force used. If there was no need and no force, then the amount of force used does not outweigh the need for force.

Furthermore, Plaintiff cannot prove that he suffered more than a de minimis injury, which further supports that if Defendants used force at all, that it was a correspondingly de minimis use of force. *Id*. Plaintiff asserts in his verified complaint that "the leg restraints altered the natural

9

flow of blood circulation, in his legs and foot, and that he was injured." DE 2 at 3. These assertions are contradicted by the evidence.

Plaintiff's medical records state that on April 10, 2019, no edema was observed. DE 87-5 at 4. Plaintiff was able to "wiggle his toes without grimacing, wincing, or complaints." *Id*. His feet were warm and dry with strong equal pedal pulses. *Id*. Plaintiff rated his pain as "10/10" but his records do not show any indications of injury besides his own self-serving testimony. *Id*. Plaintiff was only given 220mg of naproxen twice daily every day for five days, and his medical records do not show any follow-up since April 10, 2019. *Id*.

Photographs taken of Plaintiff contradict his injury claims as well. DE 87-10 p. 3-5. Photographs of Plaintiff's leg show no injury, no visible swelling, and no indentation from the leg irons. *Id*. The leg irons are also clearly not tight enough to restrict blood flow as Plaintiff has asserted. *Id*. The leg irons are loose enough to go over Plaintiff's socks. *Id*. Plaintiff cannot demonstrate that he suffered any injury. No reasonable jury could conclude that Plaintiff was injured when his blood flow was restricted by leg irons that are loose enough to fit over articles of clothing, do not leave any indentations, do not cause any edema, and do not cause any grimacing, wincing, or complaints when wiggling his toes. While not dispositive, absence of injury is relevant to Eighth Amendment inquiry as it can reflect the amount of force used. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "An inmate who complain of a push or a shove," a substantially larger amount of force used than what was alleged here, "almost certainly fails to state a valid excessive force claim." *Id*. at 38 (internal quotations omitted).

Defendants are entitled to qualified immunity on this claim. Plaintiff has not established that force was used against him or that any force used against him was not used in a good-faith

effort to maintain or restore discipline. There is no genuine issue of material fact here. Defendants are entitled to judgment as a matter of law.

### 2. *Defendants did not violate clearly established law*

The second prong of the qualified immunity analysis requires Plaintiff to show that the constitutional right was clearly established at the time of the misconduct such that a reasonable official would have known. Conduct that is not clearly established as a constitutional violation is any conduct over which an inconsistency in the law surrounding it might arise. *Perry v. Adams*, 993 F.3d 584, 587 (8th Cir. 2021). An official would have no way of reasonably anticipating "subsequent legal development" as a result of his actions if the right was not clearly established at the time of the alleged misconduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In other words, if a right is not clearly established, an official would have no way of knowing his or her conduct was illegal. It follows then, that if the law was clearly established, that a "reasonably competent public official" would know his or her conduct was prohibited. *Harlow*, at 819. A person who suffers an injury as a result of an official who knows of a clearly established constitutional right likely has a cause of action against that officer. *Id*. Plaintiff is not someone who has a cause of action, because the conduct of Defendants was not a clearly established constitutional violation.

Passive restraint use can, occasionally, create an excessive use of force claim. *Jackson v. Gutzmer*, 866 F.3d 969, 976 n.3 (8th Cir. 2017). But no court supports the proposition that leaving an inmate who was already in restraints in those restraints constitutes excessive use of force. The closest case to raising this point is *Walker v. Bowersox*. 526 F.3d 1186 (8th Cir. 2008). While *Walker* does have both a deliberate indifference claim and an excessive force claim arising out of the same incident, it is distinguishable from this case. In *Walker*, the plaintiff pled that the defendants in his case forcibly restrained him to a bench and the force used in the act of restraining him when it was not necessary was the excessive use of force. The Plaintiff in *Walker* slipped out

of his handcuffs and refused to allow officers to recuff him, because he did not want to be placed in a cell with a particular cell mate. *Id*. at 1188. He did submit to being cuffed soon after, and in response, officers cuffed him and then forcibly restrained him to a bench for more than twenty-four hours. *Id*. The inmate then filed an excessive force claim for the act of restraining him to the bench, because by submitting to cuffing he had removed any threat or need for force. *Id*. He also had a deliberate indifference claim for the duration and conditions that he was exposed to while he was restrained to the bench. *Id*. The allegations of the defendants forcibly restraining him to the bench are critical for the excessive force claim, and no such allegations exist here. Defendants did not forcibly restrain Plaintiff at any point. SUMF ¶ 48. *Jackson v. Gutzmer*, also makes this distinction. 866 F.3d 969 (8th Cir. 2017). In *Jackson*, the court considered whether the defendant "used or authorized the use of excessive force **in placing** Jackson on the restraint board." *Id*. at 974 (emphasis added). Also, in *Jackson*, the Eighth Circuit noted that, because of its general incompatibility with excessive force claims, "[w]hen the use of passive restraints is challenged, careful analysis of the factual context may be needed to determine the appropriate substantive standard" *Id*. at 976 n.3. Here, the facts show that no force was used in placing Plaintiff into passive restraints, so an excessive force claim would be inappropriate and cannot be clearly established.

For Plaintiff to show that the constitutional violations were clearly established, the law must have been so obvious that every prison official would have known the conduct was prohibited. *Harlow*, at 818. The conduct alleged in this complaint is not clearly established as a constitutional violation. Therefore, without a showing that Defendants conduct violated a clearly established constitutional right, such that a reasonable official would have known, the claims against Defendants in their individual capacities should be barred by the doctrine of qualified immunity.

## V. CONCLUSION

For all these reasons, Defendants are entitled to summary judgment and the Court should dismiss Plaintiff's claims in their entirety.

WHEREFORE, Defendants pray their motion for summary judgment is granted and that Plaintiff's lawsuit be dismissed.

                              Respectfully submitted,

                              TIM GRIFFIN
                              Attorney General

By:                     Andrew Middlebrooks
                              Ark. Bar No. 2017057
                              Assistant Attorney General
                              Arkansas Attorney General's Office
                              323 Center Street, Suite 200
                              Little Rock, Arkansas 72201
                              Tel.: (501) 503-4334
                              Fax: (501) 682-2591
                              Email andrew.middlebrooks@arkansasag.gov

                              *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Andrew Middlebrooks, hereby certify that on October 30, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will notify all counsel of record.

                                                        Andrew Middlebrooks