UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MARCUS D. EVANS                                                                                    PLAINTIFF
ADC #109369

V.                                    No. 4:20-CV-00173-KGB-BBM

LORENETTA SMITH,
Sergeant, Varner Unit, ADC;
TELICIA MOTHERSHED,
Sergeant, Varner Unit, ADC;
and MARQUIS TAYLOR,
Corporal, Varner Unit, ADC                                                                         DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to Chief United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Chief Judge Baker may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

I.      INTRODUCTION

On February 20, 2020, Plaintiff Marcus D. Evans ("Evans") filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights in the Varner Supermax Unit of the Arkansas Division of Correction ("ADC"). (Doc. 2). After two

rounds of dispositive motions, the only remaining issue before the Court is Evans's claim that Defendants Sergeant Lorenetta Smith, Sergeant Telicia Mothershed, and Corporal Marquis Taylor subjected him to excessive force by leaving him in leg restraints for fifteen hours without any penological reason for doing so. (*See* Docs. 68, 80, 94, 96).

Defendants filed a Motion for Summary Judgment, Statement of Undisputed Facts, and Brief in Support on that claim. (Docs. 98, 99, 100). Evans, now represented by court-appointed counsel, filed a Response to the Motion for Summary Judgment and a Response to the Statement of Undisputed Facts. (Docs. 102, 103). The time for a reply brief has expired. LOCAL RULE 5.5(c). Thus, the issues are joined and ready for disposition.

## II.     FACTUAL BACKGROUND

On April 9, 2019, Evans was scheduled to attend Varner Supermax's Step-Down Program ("the Program")—a program designed to prepare maximum-security prisoners for housing in general population. (Doc. 87-9 at 23). In accordance with Varner Supermax policy, Evans was required to be escorted in full restraints, which included hand restraints and leg restraints connected by a tether. (Doc. 87-6 at 56–57; Doc. 87-7 at 9; Doc. 87-8 at 34).

Around 7:00 a.m. the morning of April 9, Sergeant Mothershed came to Evans's single-occupancy cell, placed him in full restraints, and escorted him to the Program. (Doc. 87-1 at 4; Doc. 87-9 at 36–38). Evans remained in the restraints throughout the duration of the Program. *Id.*

Around 9:00 a.m., after the Program concluded, Sergeant Smith and Corporal Taylor escorted Evans back to his cell. *Id.* Once secured in his cell, Smith and Taylor

2

removed Evans's hand restraints but failed to remove his leg restraints. (Doc. 103 at 3–4, ¶ 17).

According to Evans, he immediately asked Smith and Taylor to remove the leg restraints, but they refused. (Doc. 87-1 at 5). Evans and Taylor got into an argument, during which Taylor told Evans to "just stay in them." (Doc. 87-1 at 5). Evans believes that Smith and Taylor purposely refused to remove the restraints because he had been in verbal altercations with them in the past. (Doc. 103 at 1–2, ¶ 5). He further alleges that Smith and Taylor had previously threatened to cause him harm. *Id.*; (Doc. 2 at 3; Doc. 87-1 at 9).

Smith and Taylor hotly contest Evans's version of the events. They allege that, after removing the hand restraints, they immediately left the cell, not realizing that the leg restraints had not been removed. (Doc. 87-2 at 2, ¶¶ 8–13; Doc. 87-4 at 2, ¶¶ 8–13). They also deny any past altercations with Evans. (Doc. 87-2 at 2, ¶¶ 19–21; Doc. 87-4 at 2, ¶¶ 19–21; Doc. 87-6 at 53; Doc. 87-8 at 27, 29, 31).

After Smith and Taylor left, Evans alleges that he called out to Sergeant Mothershed, who was nearby. (Doc. 2 at 4; Doc. 87-1 at 6). He asked her to remove the leg restraints, but Mothershed refused, stating that she was not the one who put him back in his cell. (Doc. 2 at 4; Doc. 87-1 at 6). Evans alleges past verbal altercations with Mothershed similar to those he had with Smith and Taylor. (Doc. 2 at 3; Doc. 87-1 at 9; Doc. 103 at 1–2, ¶ 5). Mothershed denies hearing Evans call out, denies talking to him, and denies any past altercations with him. (Doc. 87-3 at 2–3, ¶¶ 9–12, 19–21).

It is undisputed, however, that Evans remained in leg restraints in his cell for the next fifteen hours. (Doc. 103 at 5, ¶ 24). For a while, Evans stood at the door trying to get

3

the attention of someone who would remove the leg restraints. (Doc. 87-1 at 6). He states he interacted with a total of four people, including a second interaction with Sergeant Mothershed, but no one helped him. (Doc. 87-1 at 6–7).

After Evans got tired of standing, he sat on his bed. (Doc. 87-1 at 7). Eventually, Evans was able to fall into an uncomfortable sleep for a couple of hours. *Id.* When he woke up, he cut his pants and boxers off with a "state-issued razor" so he could take a shower.[1] (Doc. 87-1 at 8; Doc. 87-7 at 15).

At 11:50 p.m., Evans called out to non-defendant Lieutenant Bivens. (Doc. 87-10 at 10, 17; Doc. 103 at 6–7, ¶¶ 30–36). When Bivens approached and realized that Evans had been left in leg restraints, he immediately responded by taking pictures of Evans's legs and torn clothing, escorting Evans to the infirmary, and removing the restraints. *Id.*

The pictures are somewhat inconclusive, but the restraints appear to be tight around Evans's ankles, and there may be some minor swelling. (Doc. 87-10 at 3–4). According to the infirmary records, Evans complained of pain in his legs that was "10/10." (Doc. 87-10 at 19). However, the nurse noted that Evans was able to "wiggle his toes without grimacing, wincing, or complaints." *Id.* She also noted that Evans was able to walk to the infirmary and had "no edema." *Id.* Evans was prescribed five days of naproxen to take, as needed, for pain. *Id.*

---

[1] It is unclear from the record whether Evans was able to take a shower in his cell or if he was escorted to communal showers, and the restraints were again left on his legs when he returned to his cell.

For the next eleven days, Evans continued to experience pain and numbness in his legs. (Doc. 87-1 at 9). However, he did not seek any further medical treatment. (Doc. 103 at 8, ¶ 41).

Following an official investigation, Sergeants Smith and Mothershed and Corporal Taylor were reprimanded for their conduct. (Doc. 87-10 at 18). Smith and Taylor were reprimanded for failing to remove the leg restraints. *Id.* Mothershed, who was supposed to keep track of the number of hand and leg restraints checked in and out on April 9, was reprimanded for failing to realize and report the missing leg restraints. *Id.*

### III. DISCUSSION

In their Motion for Summary Judgment, Defendants argue they are entitled to qualified immunity because their actions did not violate a clearly-established constitutional right. Evans responds that disputed material facts preclude summary judgment.

#### A. Standard of Review

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* FED R. CIV. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

### B. Qualified Immunity

To determine if Defendants are entitled to qualified immunity, the Court must conduct a two-prong inquiry into whether Evans has demonstrated: "(1) a deprivation of a constitutional right, [that was] (2) … clearly established at the time of the deprivation." *Robbins v. City of Des Moines*, 984 F.3d 673, 678 (8th Cir. 2021). The Court will consider each prong, in turn.

#### 1. Deprivation of a Constitutional Right

In determining whether Defendants' actions violated Evans's Eighth Amendment right to be free from excessive force, the core judicial inquiry is "whether [the] force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (citations omitted). "Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, *i.e.*, they are using it maliciously and sadistically." *Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) (citation omitted). Mere negligence—even *gross* negligence—cannot support a constitutional claim. *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005).

It is undisputed that there was no penological need to keep Evans in leg restraints for fifteen hours while he was secure in his one-man cell. Because the restraints were not left on to "maintain or restore discipline," the remaining inquiry is whether Defendants "maliciously and sadistically" left the restraints on Evans "to cause harm." *Jackson*, 866 F.3d at 974. There are material factual disputes regarding this issue.

6

Evans testified and stated in his verified Complaint that Defendants had previously threatened to cause him harm, and, when he asked them to remove the restraints, they refused. Defendants claim no such threats or requests occurred and, instead, appear to argue that they *negligently* left the leg restraints on Evans.

Because no evidence in the record blatantly contradicts any party's version of the facts, the Court cannot resolve this material fact dispute.[2] *Watson v. Boyd*, 2 F.4th 1106, 1110 (8th Cir. 2021) (citations omitted); *Steed v. Missouri State Highway Patrol*, 2 F.4th 767, 770 (8th Cir. 2021) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). And, viewing the disputed material facts in a light most favorable to Evans, a reasonable jury could conclude that Defendants "maliciously and sadistically" left Evans in leg restraints to cause harm. *See Burns v. Eaton*, 752 F.3d 1136, 1140 (8th Cir. 2014) (citing *Williams v. Jackson*, 600 F.3d 1007, 1014 (8th Cir. 2010) (noting that "a complete absence of a penological purpose" and "prior contacts or relations" between the plaintiff and defendants may "raise[] the reasonable inference that the officers acted maliciously in an effort to cause harm")

---

[2] Defendants provided a video that shows Evans being escorted to his cell by Smith and Taylor with Mothershed in the general vicinity of Evans's cell on April 9, 2019. (Doc. 75). However, the door to Evans's cell is obscured by a staircase, and any interaction that occurred once Evans was in his cell is not visible. Additionally, the video contains no audio and cannot be used to determine whether Evans called out to any of the Defendants or asked them to remove his leg restraints. Thus, the video is inconclusive and does not "blatantly contradict" Evans's version of the facts.

(internal quotations omitted). Thus, Defendants are not entitled to qualified immunity on the first prong of the qualified-immunity analysis.[3]

The analysis does not stop there, however. Because courts cannot deny defendants qualified immunity unless *both* prongs of the analysis are resolved in the plaintiff's favor, the Court will proceed to the "clearly established" prong. *Watson v. Boyd*, 2 F.4th 1106, 1112 (8th Cir. 2021) (citations omitted).

### 2. Clearly Established Right

For the clearly-established prong, the Court looks to whether the constitutional right at issue "is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (cleaned up). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* at 12 (emphasis in original). For a right to be clearly established, there must be a "controlling case" or a "robust consensus" of persuasive authority that places the constitutional question beyond debate. *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020) (*en banc*) (citations omitted). Alternatively, a "body of relevant case law" is *not* necessary where the conduct is an "obvious" violation of a constitutional right. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam) (citing *Hope v. Pelzer*, 536 U.S. 730 (2002)).

---

[3] In a recent excessive-force restraints case, the Eighth Circuit found that a prison supervisor was entitled to qualified immunity on the first prong on the analysis because the plaintiff failed to allege that she was *personally involved* in handcuffing and restraining him to a bench on two occasions. *Stewart v. Precythe*, No. 22-3297, 2024 WL 335302, at **3–4 (8th Cir. Jan. 30, 2024). That case is easily distinguishable from the case at bar because Evans has alleged personal involvement by each Defendant—namely, that each Defendant was aware Evans was left in leg restraints but ignored his pleas to have them removed.

In making their "clearly established" arguments, the parties point to three cases: *Hope v. Pelzer*, 536 U.S. 730 (2002); *Jackson v. Gutzmer*, 866 F.3d 969 (8th Cir. 2017); and *Walker v. Bowersox*, 526 F.3d 1186 (8th Cir. 2008). In *Hope*, the Supreme Court found that handcuffing a shirtless prisoner to a hitching post for seven hours in the hot Alabama summer sun, with negligible water breaks and no bathroom breaks, was an "obvious" violation of the Eighth Amendment.[4] 536 U.S. 730. In *Jackson*, the Eighth Circuit found that *no* Eighth Amendment excessive-force violation occurred when, after obtaining medical clearance to do so, the defendant placed a prisoner on a restraint board for four hours and had "a nurse make sure the placement on the board was not injurious or painful." 866 F.3d at 976–77. In *Walker*, the Eighth Circuit found that restraining a prisoner to a bench for twenty-four hours, with no access to water, bathroom breaks, food, or his prescribed medication, presented "trialworthy issues" as to whether those conditions constituted excessive force in violation of the Eighth Amendment. 526 F.3d at 1188. None of these cases "clearly establish" a constitutional violation within the particular context of this case.

First, Evans has not shown or even alleged that he was denied access to food, water, medication, or the bathroom during the fifteen hours he was confined in his cell. Second, a hitching post, restraint board, and restraint bench are fundamentally different—*i.e.*, more

---

[4] It is unclear whether the conduct in *Hope* was considered a violation of the prisoner's Eighth Amendment right to be free from excessive force, his Eighth Amendment right to be free from unconstitutional conditions of confinement, or both. *See* 536 U.S. at 738–39.

restrictive, publicly humiliating, and uncomfortable—than the leg restraints at issue in this case.

In fact, the Court can find only one case in the Eighth Circuit where the use of simple restraints (handcuffs or leg restraints) constituted an excessive force violation: *Aldape v. Lambert*, 34 F.3d 619 (8th Cir. 1994). In that case, the court upheld a jury verdict, which found that handcuffing a prisoner behind his back for seventy minutes, contrary to known medical orders, violated the Eighth Amendment. *Id.* at 621, 623. In contrast, Evans was subject to leg restraints, and there is no evidence of any medical limitations in the record. Thus, *Aldape* also does not clearly establish a constitutional violation in this case.

Turning to persuasive authority, other Circuit case law regarding use of restraints is not sufficiently "robust" or analogous to the particular conduct in this case to clearly establish an Eighth Amendment violation. *See Barker v. Goodrich*, 649 F.3d 428, 434–35 (6th Cir. 2011) (*handcuffing* nonresistant prisoner *behind his back* in his cell for twelve hours constituted an Eighth Amendment excessive force violation where prisoner "*missed a meal* and was unable to sit or lie down without pain, *use restroom, or obtain water from fountain*") (emphases added); *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994) (finding, *at the pleading stage*, that allegations of excessively tight restraints state an Eighth Amendment excessive force claim).

Finally, this is not the rare case where Defendants' alleged conduct was so "repugnant to the conscience of mankind" or such an obvious "malicious and sadistic" infliction of pain to negate the need for "a body of relevant case law." *Jackson*, 866 F.3d

at 974, 978; *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *Brosseau*, 543 U.S. at 199; *Hope*, 536 U.S. 730.

Without a "controlling case," a "robust consensus" of persuasive authority, or an "obvious" constitutional violation, it was not clearly established on April 9, 2019, that leaving an inmate to move about his cell in leg restraints for fifteen hours would violate the Eighth Amendment prohibition on excessive force. Thus, Defendants are entitled to qualified immunity on the "clearly established" prong of the qualified immunity analysis.

## IV.    CONCLUSION

IT IS THEREFORE RECOMMENDED THAT:

1.  Defendants' Motion for Summary Judgment (Doc. 98) be GRANTED.

2.  Evans's individual-capacity excessive-force claims against Smith, Mothershed, and Taylor be DISMISSED, with prejudice.

3.  Judgment be entered accordingly.[5]

DATED this 6th day of February, 2024.

*Benecia Moore*
UNITED STATES MAGISTRATE JUDGE

---

[5] Evans's individual-capacity deliberate-indifference claim against Smith, Mothershed, and Taylor was dismissed previously with prejudice. (Doc. 96). All other claims were dismissed without prejudice. (Doc. 20).